**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL TROEGER,**

                          **Plaintiff,**              **1:10-cv-718**
                                                      **(GLS/DRH)**

              **v.**

**ELLENVILLE CENTRAL SCHOOL**
**DISTRICT,**

                          **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Sussman, Watkins Law Firm              MICHAEL H. SUSSMAN, ESQ.
55 Main Street, Suite 6
P.O. Box 1005
Goshen, NY 10924

**FOR THE DEFENDANT:**
Drake, Loeb Law Firm                   ADAM L. RODD, ESQ.
555 Hudson Valley Avenue               RALPH L. PUGLIELLE, JR., ESQ.
Suite 100
New Windsor, NY 12553

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Michael Troeger commenced this action under the Americans

with Disabilities Act (ADA),[1] alleging that, as part of a concerted discriminatory campaign, Ellenville Central School District ("the District") impermissibly docked his sick leave and failed, on multiple occasions, to reasonably accommodate his disability.  (*See* Compl., Dkt. No. 1.) Pending is the District's motion for summary judgment.  (Dkt. No. 12.)  For the reasons that follow, the District's motion is granted in part and denied in part.

## II.  **Background**[2]

On November 19, 2004, Troeger, a school counselor in the employ of the District since 1995, injured his lower back while lifting a conference table.  (Def.'s Statement of Material Facts (SMF) ¶¶ 1-2, 6-7, Dkt. No. 12, Attach. 15.)  As a result of his injuries, Troeger was absent from work until March 2005.  (*Id.* ¶ 8.)  Seven months later, on October 19, 2005, Troeger was pushed into a filing cabinet by a 4th grade student, resulting, in the opinion of the school nurse, in a lower back contusion.[3]  (*Id.* ¶¶ 23-25.)  A previously-scheduled MRI performed the following day showed "[l]eft

---

[1] 42 U.S.C. § 12101 *et seq.*

[2] The facts are undisputed unless otherwise noted.

[3] The question of whether this incident caused Troeger further injury is a central point of contention between the parties.

2

posterolateral annular tear with focal protrusion into the left L4 neural foramen." (*Id.* ¶ 27; Dkt. No. 16, Attach. 20 at 3.) Troeger left work a month later, on November 29, 2005, and remained absent until attempting to return to the District for the 2006-07 school year. (*Id.* ¶ 28; Pl.'s SMF ¶ 35, Dkt. No. 15.)

In notes dated August 24, 2006, Dr. Janet Tamai indicated that Troeger could return to work two days per week with restrictions, including four-hour work days, activity limitations and freedom from exposure to "excessive stressors." (Def.'s SMF ¶ 37; Pl.'s SMF ¶ 38; Dkt. No. 16, Attach. 9.) Superintendent Lisa Wiles responded to Dr. Tamai, requesting clarification on several aspects of her recommendations, including "what constitutes an 'excessive stressor.'" (Dkt. No. 12, Attach. 11 at 18.) On September 5, 2006, Dr. Tamai clarified Troeger's physical limitations, and opined that he "should not be involved in crisis intervention," and that his "interaction with all staff should be at a low level of stress." (*Id.* at 20.) Following an additional inquiry by Wiles, (*see id.* at 22), Dr. Tamai clarified that Troeger "should not be involved in any violent crisis intervention that is of a physical nature which would put him in the position of potentially re-injuring his back," but that "[h]e may interact with students in any other

3

manner that is required by his job description," and that "his interaction with staff should be at a low level of stress, as much as one is able to control." (*Id.* at 24.)  The District subsequently referred Troeger to Dr. John Lucas for a psychiatric evaluation pursuant to N.Y. Educ. Law § 913.  (*Id.* at 26; Dkt. No. 12, Attach. 12 at 2.)  In a November 30, 2006 report, Dr. Lucas determined that Troeger could not "perform the duties of a school guidance counselor at [that] time," and Troeger was not permitted to return to work during the 2006-07 school year.  (Dkt. No. 12, Attach. 12 at 8-9; Def.'s SMF ¶ 48.)

Under the District's Collective Bargaining Agreement (CBA), absences resulting from on-the-job assaults are not charged against an employee's sick leave entitlement.  (*See* Dkt. No. 12, Attach. 10 at 16.)  On August 20, 2007, a Workers' Compensation Board (WCB) Panel found that Troeger "failed to meet his burden of establishing a causal relationship between his low back injury" and the October 19, 2005 work incident.  (Dkt. No. 12, Attach. 12 at 13-15; Def.'s SMF ¶ 51.)  The District subsequently charged the absences accrued by Troeger following the October 19, 2005 incident against his sick leave allotment.  (Def.'s SMF ¶ 52.)

Before the 2007-08 school year began, the District asked Troeger to

4

submit medical evidence of his physical and mental fitness to return to work.  (Def.'s SMF ¶¶ 60, 63.)  In a letter dated September 9, 2007, Dr. Megan McMullan[4] indicated that Troeger could return to work "in a capacity ad lib from part to full time," with accommodations such as an ergonomic chair and desk, and that "there should be efforts made to prevent him from having to physically restrain students."  (Dkt. No. 12, Attach. 12 at 19.)  The District sought clarification, (*see id.* at 23-24), and Dr. McMullan opined that Troeger could begin working twenty hours per week "and increase to full time rapidly" if his symptoms avoided aggravation.  (*Id.* at 27.)  Dr. McMullan further indicated that the type of ergonomic chair and desk required was "up to [the District's] discretion."  (*Id.*)  Following the November 2, 2007 receipt of a report from Psychologist Richard Ovens indicating that he could return to work (*see* Def.'s SMF ¶ 67), Troeger was instructed by the District to report for part-time employment on November 7, 2007.  (*Id.* ¶ 68.)  From his return on November 7, 2007, until the present, Troeger has worked in an In-School Suspension (ISS) room.  (*Id.* ¶ 71.)

---

[4] Dr. McMullan responded to the District's request because Dr. Tamai was on maternity leave.  (Dkt. No. 12, Attach. 12 at 19.)

5

On August 25, 2008, Troeger filed a charge against the District with the Equal Employment Opportunity Commission (EEOC).  (*See* Dkt. No. 1, Attach. 1 at 3-6.)  On March 17, 2010, the EEOC issued Troeger a right-to-sue letter after reaching an inconclusive determination as to his charge. (Dkt. No. 1, Attach. 2.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, No. 1:09-cv-652, 2011 WL 5599571, at *4 (N.D.N.Y. Nov. 17, 2011).

### IV.  Discussion

### A.   ADA Framework

The ADA prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2008).[5]  In order to establish a prima facie disparate

---

[5] Effective January 1, 2009, Congress amended the ADA "in order to expand its coverage."  *See Stephan v. West Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 79 n.1 (2d Cir. 2011).  Because the conduct in question occurred prior to 2009, however, Troeger's claims are analyzed under the pre-2009 version of the ADA, and all ADA citations are to that statute unless otherwise noted.  *Id.*

6

treatment claim under the ADA, a plaintiff must show that: "(1) the employer is subject to the ADA; (2) [he] is disabled within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability." *Nader v. ABC Television, Inc.*, 150 F. App'x 54, 55 (2d Cir. 2005).  Disparate treatment claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id.*

An employer may also be liable under the ADA where it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A); *see McBride v. BIC Consumer Prod. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).  To make a prima facie showing of an employer's failure to accommodate, a plaintiff must establish that "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.

7

2004).

**B.    Timeliness**

The District argues first that, under the 300-day EEOC statute of limitations, all claims asserted by Troeger which arose prior to November 7, 2007 are barred as untimely.  (Dkt. No. 12, Attach. 7 at 8-11.)  Troeger contends that his pre-November 2007 claims are timely under the continuing violation doctrine.  (Dkt. No. 14 at 10-12.)  The court agrees with the District.

As a prerequisite to commencing a discrimination claim under the ADA, a claimant must file a charge with the EEOC within 300 days of the allegedly unlawful act.  *Valtchev v. City of N.Y.*, 400 F. App'x 586, 588 (2d Cir. 2010) (citing 42 U.S.C. § 12117(a)).  Where the act in question is discrete, or easy to identify—such as "failure to promote, denial of transfer, or refusal to hire," *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)—neglecting to file a timely EEOC charge is fatal. *Valtchev*, 400 F. App'x at 588.  Under the continuing violation doctrine, however, acts falling outside of the 300-day window may not be time barred where they are part of an ongoing "policy and practice of prohibited discrimination," and at least one discriminatory act in furtherance of that

8

scheme is alleged to have occurred within the limitations period.  *Id.* at 588-89.  The continuing violation doctrine is not implicated, though, by "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism."  *Id.* at 588-89 (internal quotation marks and citation omitted).

Troeger's EEOC charge was filed on September 2, 2008, extending the reach of the 300-day statute of limitations to November 7, 2007.  (*See* Def.'s SMF ¶ 96).  The alleged acts of discrimination at issue are: (1) the District counting Troeger's absences following the October 19, 2005 incident against his sick leave allotment; (2) its failure to accommodate Troeger's disability in a manner that would have allowed him to work during the 2006-07 school year; and (3) following his return in November 2007, its failure to accommodate his disability during the 2007-08 school year by depriving him of an ergonomic chair and requiring him to work in the ISS room.  (*See* Compl. ¶¶ 8-19.)  The District's alleged failure to accommodate Troeger's disability during the 2007-08 school year is the only act which falls within the limitations period.[6]

_____

[6] While the District argues that Troeger was notified of its decision to dock his sick-time allotment by way of an August 31, 2007 letter from Wiles, (*see* Def.'s SMF ¶ 54), Troeger counters that he did not receive notice until October 11, 2007, (*see* Pl.'s SMF ¶ 54).  As support for this contention, Troeger inexplicably cites to Wiles' August 31, 2007 letter.  (*Id.*)  In

9

In *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003), the Second Circuit held that "an employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation," but rather constitutes a "'discrete act.'" This reasoning has also been applied to reasonable accommodation claims brought under the ADA. *See, e.g.*, *Lipka v. Potter*, No. 03CV381A, 2006 WL 839421, at *4 (W.D.N.Y. Mar. 28, 2006); *Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, No. 01-CV-326, 2003 WL 22019073, at *4 (E.D.N.Y. Aug. 26, 2003); *see also Davis v. N.Y. State Office of Mental Health*, No. 05-CV-5599, 2009 WL 5178440, at *6 (E.D.N.Y. Dec. 31, 2009) (collecting cases). Accordingly, the District's alleged failures to accommodate constitute discrete acts, not a continuing violation. Because the alleged discrimination by the District was comprised of discrete acts with no evidence of a concerted policy or mechanism, summary judgment is granted as to Troeger's sick leave disparate treatment claim, as well as his failure to accommodate claim to the extent that it relates to events which occurred prior to November 7, 2007.

---

any event, because both dates precede November 7, 2007, Troeger was undoubtedly made aware of the District's position more than 300 days prior to the filing of his EEOC complaint.

**C.     Disability Determination**

The District avers next that it is entitled to summary judgment on all claims because Troeger is not "disabled" as that term is defined by the ADA.  (Dkt. No. 12, Attach. 7 at 15-17.)  Troeger counters, and the court agrees, that a reasonable jury could find that his back ailments constitute a qualifying disability.  (Dkt. No. 14 at 12-15.)

As noted above, a plaintiff must show his disability under the ADA in order to establish both a disparate treatment and failure to accommodate claim.  *See  Nader*, 150 F. App'x at 55; *Rodal*, 369 F.3d at 118.  Under the ADA, "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Allegations of disability advanced under the first method require of the plaintiff: (1) a showing that he suffers from a physical or mental impairment; (2) identification of the supposedly-impaired major life activity; and (3) demonstration of substantial limitation of that activity. *Duttweiller v. Eagle Janitorial, Inc.*, No. 5:05-CV-0886, 2009 WL 1606351, at *18 (N.D.N.Y. June 4, 2009).

For purposes of the ADA, a physical impairment is "'[a]ny

11

physiological disorder, or condition . . . affecting one or more of the following body systems: neurological [or] musculoskeletal . . . .'" *Francis v. City of Meriden*, 129 F.3d 281, 283 (2d Cir. 1997) (quoting 29 C.F.R. § 1630.2(h)(1)).  "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," as well as "sitting, standing, lifting, [and] reaching."  *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (internal quotation marks and citations omitted).  Substantial limitation occurs where a plaintiff is "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to . . . the average person."  *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)).

The crux of the District's disability argument is that Troeger's herniated disks were temporary, and therefore did not substantially limit any major life activities.  (*See* Dkt. No. 12, Attach. 7 at 15-17.)  While the Second Circuit has declined to find temporary injuries *"per se* unprotected under the ADA," *see Adams v. Citizens Advice Bureau*, 187 F.3d 315, 317 (2d Cir. 1999), a proper disability analysis considers the duration of

12

impairment, *see Capobianco v. City of N.Y.*, 422 F.3d 47, 57 (2d Cir. 2005).

In support of its argument, the District points to Troeger's return to full-time

work, an October 3, 2007 note by Dr. McMullan indicating "no significant

restrictions on driving, walking, standing, sitting, or climbing stairs,"[7] and a

January 2012 orthopedic report describing Troeger's musculoskeletal

condition as "both transitory and minor." (Dkt. No. 12, Attach. 7 at 16-17;

Attach.12 at 27; Attach. 13 at 51.)

   While Troeger cites only generally to the medical evidence of record

in support of the contention that his back injury substantially limited his

ability to, *inter alia*, lift, sit, stand and work,[8] that evidence is nevertheless

sufficient to defeat summary judgment on the question of disability. (Dkt.

No. 14 at 12-14.) The District admits that Troeger first injured his back in

------

[7] To the extent that the District's reply papers can be construed as objecting to Troeger's reliance on the notes of his doctors in opposing summary judgment, (*see* Dkt. No. 22 at 8-9), that objection is waived because the District similarly offered, and relied on, those letters. *See Capobianco*, 422 F.3d at 55 (holding that while "unsworn letters from physicians generally are inadmissible hearsay," where a defendant submits and relies upon such letters, it waives objection to their admissibility).

[8] Troeger first articulated lifting and working as relevant life activities in his response papers. (*See* Dkt. No. 14 at 12, 14.) The District contends that the omission of these activities from the Complaint precludes their consideration. (*See* Dkt. No. 22 at 7-8.) While the threat of prejudice in the discovery process in some cases justifies refusal to consider particular claims first raised in opposition to summary judgment, *see Greicus v. Liz Claiborne, Inc.*, No. 00 CIV 9518, 2002 WL 244598, at *3 (S.D.N.Y. Feb. 20, 2002), no such threat exists here as the District itself offered, and relied on, the physician letters upon which Troeger largely bases his impairment arguments.

2004, (*see* Def.'s SMF ¶ 6), and the notes of Drs. Tamai and McMullan indicate that injury persisted, in some degree of severity, through at least the beginning of the 2007-08 school year, (*see Id.* ¶¶ 37, 39, 41, 61, 65). In addition to the findings cited to by the District, Dr. McMullan's October 3, 2007 note also stated that Troeger should work only twenty hours per week, have an "ergonomic chair and desk setting," and that his "[l]ifting restriction [was] already documented," referencing her previous report from September 9, 2007, in which she noted that Troeger "should be limited to lifting less than 20 pounds." (Dkt. No. 12, Attach. 12 at 19, 27.) Upon his return to work in November 2007, the District heeded McMullan's suggestion of a reduced schedule, limiting Troeger to working four hours per day. (Dkt. No. 16, Attach. 28.)

Because Troeger has established the existence of a back injury beginning as early as 2004, and identified major life activities which he claims were substantially limited, the ultimate disability determination under the first method hinges on a finding of whether a substantial limitation existed. *See Duttweiler*, 2009 WL 1606351, at *18. Construing all evidence in the light most favorable to him, a reasonable jury could find that, during the relevant time period, Troeger suffered substantial limitation

14

of a major life activity, thereby precluding summary judgment as to this point.

**D.**   **Sick Leave Claims**

Next, the District seeks summary judgment on Troeger's sick leave claims[9] on the grounds that the decision to dock his sick time allotment was not made "because of" his disability, or, alternatively, that Troeger was not a "qualified individual" under the ADA.  (Dkt. No. 12, Attach. 7 at 11-14.) Because it is dispositive, the court need only address the District's first argument.

As noted above, establishing a prima facie disparate treatment claim under the ADA requires a showing that the plaintiff "suffered an adverse employment action because of his disability."  *Nader*, 150 F. App'x at 55. Although "[a] trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue," *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994),

---

[9] While the District's initial decision to charge Troeger's absences against his sick-time allotment is dismissed as untimely, Troeger alleges that he became aware in 2009 that, as a result of its 2007 decision, the District was prospectively docking his sick leave in an effort to recoup the salary he received in 2006-07.  (Dkt. No. 14 at 4.)  To the extent that Troeger portrays these subsequent actions as discrete acts of discrimination, they are addressed on the merits.  Because the alleged conduct occurred after December 31, 2008, the ADA Amendments Act applies.  *See Stephan*, 450 F. App'x at 79 n.1.  This distinction, however, is irrelevant to the instant analysis.

summary judgment cannot be defeated by the mere assertion of "conclusory allegations of discrimination." *Greene v. New York*, No. 95 Civ. 6580, 1998 WL 264838, at *6 (S.D.N.Y. May 22, 1998) (citing *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154 (2d Cir. 1988)).

Following an August 20, 2007 determination by the WCB that Troeger failed to establish a causal link between his back injury and the October 19, 2005 incident, (*see* Def.'s SMF ¶ 51), the District charged Troeger's absences, which spanned from November 2005 through the end of the 2006-07 school year, against his sick-time allotment.  (*Id.* ¶ 52.)  The District's CBA provides that where "an employee is absent from school as a result of a personal injury caused by an assault . . . , the employee shall be paid his or her salary for the duration of such absence, and no part of such absence shall be charged to the employee's sick leave entitlement."  (Dkt. No. 16, Attach. 3.)  Superintendent Wiles testified that "[w]here the [WCB] finds that absences are not causally related to a claimed on-the-job injury, the District's practice has always been to charge any such absences against an employee's sick time."  (Dkt. No. 12, Attach. 2 ¶ 14.)

Troeger contends that his sick leave was docked because of his disability and that the District's reliance on the WCB determination violates

16

the CBA and is therefore mere pretext.  (Dkt. No. 14 at 17-19.)  No

evidence has been adduced by Troeger, however, to refute Wiles'

testimony that the district has always relied on WCB findings in making

disability determinations following alleged on-the-job injuries.  (*See id.*)

Furthermore, even if Troeger is correct that conditioning the payment of

benefits on a WCB determination violates the CBA, such a violation does

not support the allegation that the District's decision was made because of

Troeger's disability.  *See Cioce v. Cnty. of Westchester*, 128 F. App'x 181,

184 (2d Cir. 2005) (holding that where a plaintiff was denied benefits for

failing to comply with an examination requirement of a CBA, his

disagreement with that clause "[did] not support his claim of discrimination

based on his disability").

Although considerable caution is required at this stage of a

discrimination case, Troeger has offered only conclusory allegations that

the District docked his sick leave because of his disability.  Accordingly, to

the extent that Troeger's sick leave claims may be construed as having

accrued after November 7, 2007, they are dismissed.

**E.**   **Failure to Accommodate During 2007-08 School Year**

Finally, the District argues that, because he did not interact in good

faith, Troeger is barred from recovering on his claim that the District failed

to accommodate his disability during the 2007-08 school year.  (Dkt. No.

12, Attach. 7 at 18-21.)  In response, Troeger insists that he consistently

displayed good faith in requesting accommodations from the District.  (Dkt.

No. 14 at 21-22.)  While the court acknowledges the eventual cessation of

good faith on the part of Troeger, he adduces sufficient facts to defeat

summary judgment as to the time period relevant here.

Where the establishment of a reasonable accommodation is at issue,

the ADA envisions an "'informal, interactive process'" between the

employer and employee.  *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F.

App'x 943, 945-46 (2d Cir. 2008) (quoting 29 C.F.R. § 1630.2(o)(3)).  "An

employee who is responsible for the breakdown of that interactive process

may not recover for a failure to accommodate."  *Id.* at 946.

At the beginning of the 2007–08 school year, Troeger was asked to

provide a medical note indicating that he was fit to return to work as a

guidance counselor.[10]  (Def.'s SMF ¶ 60.)  In response to this request, Dr.

McMullan indicated that, upon returning to work, Troeger should receive an

---

[10] While communications between Troeger and the District regarding accommodations
began in 2005, (*see* Def.'s SMF ¶ 31), this request is the first interaction relevant to the period
at issue.

"ergonomic chair and desk setting," and that "there should be efforts made to prevent him from having to physically restrain students." (Dkt. No. 16, Attach. 21 at 2.) Following a letter of clarification by Dr. McMullan, (*see* Dkt. No. 16, attach. 23 at 2), Wiles wrote to Troeger on November 2, 2007, instructing him to resume work the following week and imploring him to contact Principal Eikszta immediately if he required "particular equipment or furniture to accommodate" his return. (Dkt. No. 12, Attach. 12 at 43.) The following day, Troeger wrote to Eikszta, requesting confirmation that the ergonomic chair which he requested in April 2006, (*see* Dkt. No. 16, Attach. 25 at 2), was ordered and received. (Dkt. No. 12, Attach. 13 at 8.) While Troeger made no further formal requests during the 2007-08 school year regarding an ergonomic chair, (*see* Dkt. No. 12, Attach. 14 at 29-30), he claims to have expressed "informal complaints to the administration." (*Id.* at 29.) Additionally, by way of a March 22, 2008 letter, Troeger notified Sherry Sharpe, the District's Director of Special Education, that his assignment to the ISS room created an "imminent *risk of re-injury*." (Dkt. No. 16, Attach. 8 at 2.)

Between the end of the 2007-08 school year and 2011, Lisa Dwyer, the District's Compliance Officer, repeatedly contacted Troeger with

19

inquiries as to whether he required any additional accommodations.  (*See* Def.'s SMF ¶¶ 74-75, 81, 84, 87, 93.)  Troeger declined each of these offers.[11]  (*See id.* ¶¶ 75, 82, 84, 88, 94.)  As explanation for his failure to work with Dwyer, Troeger claims that he believed to do so would have violated Wiles' November 2, 2007 letter instructing him to contact Eikszta regarding necessary accommodations.  (*See id.* ¶ 76.)

The District relies heavily on Troeger's failure to communicate with Dwyer as evidence of his bad faith.  (*See* Dkt. No. 12, Attach. 7 at 20.)  While the court agrees, Troeger's Complaint limits the District's alleged failure to accommodate to the end of the 2007-08 school year.  (*See* Compl. ¶¶ 8, 13, 18.)  Because Dwyer's communications did not commence until the end of that school year, (*see* Def.'s SMF ¶ 75), Troeger's lack of good faith from that point forward is of no moment.

As for the entirety of the 2007-08 school year, Troeger has adduced facts which could lead a reasonable jury to find that he engaged in good faith efforts with the District during that period.  Accordingly, the District's motion for summary judgment is denied as to Troeger's failure to

---

[11] On October 4, 2010, Troeger wrote to Eikszta, again requesting an ergonomic chair and providing specific model information.  (Dkt. No. 16, Attach. 29 at 2.)  Two days later, on October 6, the chair requested by Troeger was delivered.  (*Id.*, Attach. 25 at 2.)

accommodate claim as it relates to the period between November 7, 2007

and the end of the 2007-08 school year.

## F. **ISS Assignment**

In its reply brief, the District argues, for the first time, that assigning

Troeger to the ISS room did not constitute a failure to accommodate.[12]

(*See* Dkt. No. 22 at 12-15.)  Because "it is inappropriate to raise new

arguments in a reply brief," the court need not, and does not, entertain the

District's contention.  *Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F.

Supp. 2d 158, 165 n.6 (N.D.N.Y. 2009).

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the District's motion for summary judgment (Dkt. No.

12) is **DENIED IN PART** and **GRANTED IN PART** as follows:

**DENIED** as to Troeger's failure to accommodate claim for the

period of November 7, 2007 until the end of the 2007-08 school year; and

**GRANTED** as to Troeger's disparate treatment claim and his

failure to accommodate claim relating to the period prior to November 7,

---

[12] In its initial brief, the District sought summary judgment on the ISS assignment issue solely on the basis of Troeger's failure to interact in good faith.  (*See* Dkt. No. 12, Attach. 7 at 18-21.)

2007, and those claims are **DISMISSED**; and it is further

ORDERED that this case is deemed trial ready and the court, in due

course, shall issue a trial scheduling order; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

May 8, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court