**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL TROEGER,**

                             **Plaintiff,**                    **1:10-cv-718**
                                                                **(GLS/DRH)**

                    **v.**

**ELLENVILLE CENTRAL SCHOOL**
**DISTRICT,**

                             **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Sussman, Watkins Law Firm            MICHAEL H. SUSSMAN, ESQ.
55 Main Street, Suite 6
P.O. Box 1005
Goshen, NY 10924

**FOR THE DEFENDANT:**
Drake, Loeb Law Firm                  ADAM L. RODD, ESQ.
555 Hudson Valley Avenue              RALPH L. PUGLIELLE, JR.,
Suite 100                             ESQ.
New Windsor, NY 12553

**Gary L. Sharpe**
**Chief Judge**


**<u>MEMORANDUM-DECISION AND ORDER</u>**

**I.  <u>Introduction</u>**

Plaintiff Michael Troeger commenced this action against the Ellenville

Central School District ("the District"), alleging multiple violations of the

Americans with Disabilities Act (ADA).[1]  (*See* Compl., Dkt. No. 1.)  In a May

8, 2012 Memorandum-Decision and Order, this court granted in part and

denied in part the District's motion for summary judgment.  (*See* Dkt. No.

25.)  As a result of that Order, Troeger's only remaining claim alleges

failure by the District to accommodate his disability between November 7,

2007 and the end of the 2007-08 school year.  (*See id.*)  Pending is the

District's motion for reconsideration.  (*See* Dkt. No. 28.)  For the reasons

that follow, the motion is granted and Troeger's remaining claim is

dismissed.

## II.  Standard of Review

"In order to prevail on a motion for reconsideration, the movant must

satisfy stringent requirements."  *In re C-TC 9th Ave. P'ship v. Norton Co.*,

182 B.R. 1, 2 (N.D.N.Y. 1995).  Such motions "will generally be denied

unless the moving party can point to controlling decisions or data that the

court overlooked-matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court."  *Shrader v. CSX*

*Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  The prevailing rule

---

[1] 42 U.S.C. § 12101 *et seq.*

"recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257.

### III.  Discussion

The District contends that reconsideration is appropriate here for the purpose of correcting clear legal error in the court's underlying disability analysis. (*See* Dkt. No. 28, Attach. 2 at 4-10.)  Specifically, it avers that the court erred, as a matter of law, in finding that a genuine factual dispute existed as to whether Troeger suffered a substantial limitation of a major life activity between November 7, 2007 and the end of the 2007-08 school year. (*See id.*)  Upon reconsideration, the court agrees.

Under the ADA, "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Allegations of disability advanced

3

under the first method require of the plaintiff: (1) a showing that he suffers

from a physical or mental impairment; (2) identification of the supposedly-

impaired major life activity; and (3) demonstration of substantial limitation of

that activity.  *See Duttweiller v. Eagle Janitorial, Inc.*, No. 5:05-CV-0886,

2009 WL 1606351, at *18 (N.D.N.Y. June 4, 2009).

For purposes of the ADA, a physical impairment is "'[a]ny

physiological disorder, or condition . . . affecting one or more of the

following body systems: neurological [or] musculoskeletal.'"  *Francis v. City

of Meriden*, 129 F.3d 281, 283 (2d Cir. 1997) (quoting 29 C.F.R. §

1630.2(h)(1)).  "[M]ajor life activities" include "functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning, and working," as well as "sitting, standing, lifting, [and]

reaching."  *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998)

(internal quotation marks and citations omitted).  Substantial limitation

occurs where a plaintiff is "(i) [u]nable to perform a major life activity that

the average person in the general population can perform; or (ii)

[s]ignificantly restricted as to the condition, manner or duration under which

[he] can perform a particular major life activity as compared to . . . the

average person."  *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)).  A proper

4

substantial limitation analysis considers: "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of N.Y.*, 422 F.3d 47, 57 (2d Cir. 2005).

The physical impairment underlying Troeger's claim is a back injury which originated in 2004 and was allegedly exacerbated in October 2005. (*See* Def.'s Statement of Material Facts (SMF) ¶¶ 6, 23-25, Dkt. No. 12, Attach. 15.)  After narrowing the disability determination to the question of substantial limitation,[2] the court, in its May 8 Order, erroneously found that a genuine issue of fact existed as to whether Troeger was substantially limited in his ability to perform the recognized major life activities of, "*inter alia*, lift[ing], sit[ting], stand[ing] and work[ing]."  (Dkt. No. 25 at 13.)

## A.  Lifting

Although a determination of substantial limitation is fact specific, *see Ryan*, 135 F.3d at 872, certain lifting restrictions have been found by a number of courts to be, as a matter of law, insufficient.  *See, e.g.*, *Cortes v. Sky Chefs, Inc.*, 67 F. App'x 66, 68 (2d Cir. 2003) (finding a ten pound

---

[2] Because Troeger argues only that his disability is the result of a physical impairment that substantially limits certain major life activities, (*see* Compl.; Dkt. Nos. 14, 30), the court does not analyze the possible viability of his ADA claim under 42 U.S.C. § 12102(1)'s "record of" or "regarded as" theories of disability.

5

lifting restriction insubstantial); *McDonald v. City of N.Y.*, 786 F. Supp. 2d 588, 609 (E.D.N.Y. 2011) (same, for twenty pounds); *Glozman v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 204 F. Supp. 2d 615, 621 (S.D.N.Y. 2002) (same, for ten pounds); *see also Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998), *superseded on other grounds* by 42 U.S.C. 12102(3)(A), (finding insubstantial the inability of respective plaintiffs to lift "very heavy objects" or "anything heavy").[3]

On November 17, 2006, approximately one year before the start of the relevant time period, orthopaedic surgeon Paul Jones opined in a school-ordered independent medical examination that Troeger "could work if he avoided bending and lifting more than about 10-15 pounds." (Dkt. No. 16, Attach. 18 at 2-4.) Troeger's physician, Dr. Megan McMullan, later indicated, in November 2007, that he "should be limited to lifting less than 20 pounds." (Dkt. No 16, Attach. 21 at 2.)

Because Troeger's lifting limitations fall within the range of

---

[3] While speculation exists as to whether similar lifting restrictions may be sufficient to establish a disability under the ADA Amendments Act of 2008 (ADAA), *see Farina v. Branford Bd. of Educ.*, No. 3:09-CV-49, 2010 WL 3829160, at *11 (D. Conn. Sept. 23, 2010), the ADAA, which became effective on January 1, 2009, does not apply retroactively, and is therefore inapplicable to the instant analysis, *see Stephan v. West Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 79 n.1 (2d Cir. 2011).

restrictions which have been deemed insufficient as a matter of law, he has failed to establish a substantial limitation of the major life activity of lifting.

**B.    Sitting and Standing**

Much like with lifting, "the inability to sit or stand for an extended duration does not amount to a substantial limitation on a major life activity." *Glozman*, 204 F. Supp. 2d at 622.  Although "a single benchmark against which to test all sitting limitations" has yet to be established, "courts have generally found that the inability to sit for periods of an hour or less may constitute a substantial limitation on the ability to sit, while the ability to sit for periods longer than an hour does not."  *Equal Emp't Opportunity Comm'n v. Yellow Freight Sys., Inc.*, No. 98 CIV. 2270, 2002 WL 31011859, at *13 (S.D.N.Y. Sept. 9, 2002).

On August 24, 2006, Janet Tamai, Doctor of Osteopathic Medicine, opined that Troeger should engage in "no prolonged sitting, standing, walking, climbing [or] bending."  (Dkt. No. 16, Attach. 9 at 2.)  Following a request for clarification from District superintendent Lisa Wiles, (*see* Dkt. No. 16, Attach. 17 at 5), Dr. Tamai explained that "'[p]rolonged' in this case is over [twenty] minutes," and that Troeger was "unable to climb [two]

flights of stairs," and "should be able to stand up or sit down when he feels it is necessary to avoid back strain," (Dkt. No. 16, Attach. 10 at 2). Over one year later, and before the time period at issue here began, however, Dr. McMullan—who "cared for [Troeger's] back condition with Dr. Tamai's help," (Dkt. No. 16, Attach. 21 at 2)—reported that he had "no significant restrictions on . . . walking, standing, sitting or climbing stairs," (Dkt. No. 16, Attach. 23 at 2).

Dr. McMullan's explicit finding in October 2007 that Troeger had no significant restrictions on standing or sitting precludes a finding of a substantial limitation of those major life activities during the relevant time period.

**C.** **Working**

To establish substantial limitation of the major life activity of working, it is not enough for a plaintiff to show "'[t]he inability to perform a single, particular job.'" *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 65 (2d Cir. 2003) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Instead, a plaintiff must be "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'"

8

*Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996)

(quoting 29 C.F.R. § 1630.2(j)(3)(i)).

In September 2007, Dr. McMullan opined that Troeger could "return

to work in a capacity ad lib from part to full time." (Dkt. No. 16, Attach. 21

at 2.) In a follow-up letter, she clarified that he should be started "at

unrestricted duty part time ([twenty] hours a week) and increase to full time

rapidly if he tolerates this position without significant aggravation of

symptoms." (Dkt. No. 16, Attach. 23 at 2.) Dr. McMullan further instructed

that Troeger's "office setting should be optimized for back health, including

ergonomic chair and desk setting," and that in addition to the twenty-pound

lifting restriction noted above, efforts should be "made to prevent him from

having to physically restrain students." (Dkt. No. 16, Attach. 21 at 2.)

Following his forced absence for the entirety of the 2006-07 school

year—the reason for which is disputed, (*see* Pl.'s Statement of Material

Facts (SMF) ¶ 48, Dkt. No. 15; Dkt. No. 16, Attach. 17 at 2)—Troeger

returned to his position as a school counselor on the first day of the

relevant time period, November 7, 2007, (*see* Dkt. No. 17 ¶ 8). Consistent

with Dr. McMullan's requests, Troeger initially returned to work on a part

time basis,[4] (*see* Dkt. No. 12, Attach. 12 at 43), but worked continuously full time for the remainder of the 2007-08 school year through the 2011-12 school year,[5] (*see* Dkt. No. 12, Attach. 14 at 9).

As Troeger admits to performing his job as a school counselor—allegedly without the requested ergonomic chair accommodation—throughout the entire relevant time period and beyond, he has failed to show significant restriction in his ability to perform a single, specific job, let alone the requisite class or broad range of jobs.  *See Colwell*, 158 F.3d at 644-45 (requiring proof of "the kinds of jobs from which [an] impaired individual is disqualified," and finding "general restrictions imposed by [plaintiff's] doctor" to be insufficient to show significant restriction).  Accordingly, Troeger has failed to establish a substantial limitation of the major life activity of working.

---

[4] Troeger makes no argument that his initial return to employment on a part time basis constituted a substantial limitation of his ability to work.  In any event, such an argument would be unavailing.  *See Zurenda v. Cardiology Assocs., P.C.*, No. 3:10-CV-0882, 2012 WL 1801740, at *8 (N.D.N.Y. May 16, 2012) (holding that an employee who, at the time of her discharge worked part time, was not substantially limited in the major life activity of working); *see also Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 409 (E.D.N.Y. 2010) ("[S]hort term, temporary restrictions are not substantially limiting and do not render a person disabled within the meaning of the ADA.") (internal quotation marks and citation omitted).

[5] Although not directly related to the back impairment on which Troeger bases his disability allegations, it should be noted that, in an October 2007 evaluation requested by the District, Psychologist Richard Ovens indicated that Troeger showed no evidence of being psychologically unfit to perform the duties of a school counselor, and that he "should return to work as soon as he is medically approved to do so."  (Dkt. No. 12, Attach. 14 at 42-44.)

Because Troeger did not experience a substantial limitation of any major life activities during the relevant time period, he is not disabled under the ADA.  *See Duttweiller*, 2009 WL 1606351, at *18.  Accordingly, he has failed to establish a *prima facie* failure-to-accommodate case, and his remaining claim must be dismissed.  *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the District's motion for reconsideration (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that Troeger's remaining failure-to-accommodate claim for the period between November 7, 2007 and the end of the 2007-08 school year is **DISMISSED**; and it is further

**ORDERED** that Troeger's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 23, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court